## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SUKHDEV SINGH (A#073613875) | ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Case No.: |
| | ) | |
| Chad Wolf, Acting Secretary of The Department of Homeland Security; Matthew Albence, Acting Director, Immigration & Customs Enforcement; Thomas Decker, Director of the New York Field Office for Immigration & Customs Enforcement) | ) ) ) ) ) ) ) ) ) | **Petition for Writ of Habeas Corpus** |
| Respondents. | ) ) ) ) | |

## PETITION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2241

Petitioner, Sukhdev Singh, respectfully petitions this Honorable Court for a writ of habeas corpus to remedy his unlawful detention by Respondents, as follows:

### INTRODUCTION

1. The crux of this case lies in the unlawful detention of the Petitioner and is part of a pattern and practice of detaining for immediate removal non-citizens who, although they may have final removal orders, are following the government's own regulations to pursue lawful immigration status based on their marriages to U.S. citizens.

2. The Petitioner is one of these non-citizens who had been regularly reporting to the United States Department of Homeland Security under an Order of Supervision, who is married

to a United States Citizen, and is pursuing legalization through an immediate relative I-130 petition.

3.  The Petitioner's well-established path to legalization has been cut off and threatens irreversible harm to his close-knit family.

4.  In 2016, the United States Citizenship & Immigration Services, itself a branch of the United States Department of Homeland Security, expanded existing avenues for legal relief by allowing non-citizens like the Petitioner herein to legalize the status irrespective of their final orders of removal. These avenues for legal relief allowed such Petitioners to remain stateside with their U.S. citizen immediate family while the legalization process played itself out. These avenues were designed to promote family unity, to avoid the hardship that must all too often ensue when a spouse and parent is forced to leave the United States for years to await the processing of their immigration cases.

5.  The Petitioner is one of many who have embarked on this path; his U.S. citizen spouse filed an I-130 petition in his behalf in February of 2019. This petition remains pending. The approval of this I-130 petition will allow the Respondent to pursue waivers curing his removal orders and unlawful status while he remains stateside with his family. The I-130 is thus the critical first step in a well-trod legalization process.

6.  Petitioner is the archetypal beneficiary of the legalization process provided for by the regulations. He is the spouse of a United States. He has three United States Citizen children with his spouse. One of his children has cerebral palsy and is in need of constant medical care.

2

7.  While his petition pends, Petitioner had heretofore been dutifully reporting to the United States Department of Homeland Security under a valid Order of Supervision pursuant to his final order of removal.

8.  However, on June 8, 2020, immigration officials suddenly, without warning detained the Respondent. Even more egregiously, these same officials promptly transferred him from the New York metropolitan area to an unknown location.

9.  The U.S. Department of Homeland Security has refused to disclose to counsel the location of the Petitioner and where he is headed. Immigration & Customs Enforcement's online detainee locator likewise provides no information as to the Petitioner's whereabouts except to invite interested family to contact the New York Field Office for Immigration & Customs Enforcement.

10. Merely detaining and attempting to remove, without warning, a Petitioner married to a United States Citizen and undergoing legalization, would have itself been cruel and unlawful under federal regulations, federal statute, and the Due Process Clause of the United States Constitution. The Courts themselves have recognized this. *See e.g. You v. Nielsen,* 18 Civ. 5392 (SDNY 2018); *Villavicencio-Calderon v. Sessions,* 330 F.Supp. 944 (SDNY 2018); *Martinez v. Nielsen,* 342 F.Supp 400 (D. NJ 2018); *Wanrong Lin v. Nielsen,* 377 F.Supp 556 (2019). However, to detain and attempt to remove such a Petitioner from a daughter with cerebral palsy, and to do so in utmost secrecy, is appalling and shocks the conscience.

11. Petitioner seeks immediate relief staying his deportation and ordering his release from detention.

JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under Art. I, § 9, cl. 2 of the United States
    Constitution (Suspension Clause); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1651
    (All Writs Act); 28 U.S.C. § 2201 (Declaratory Judgment Act); 28 U.S.C. § 2241 (habeas
    corpus).

13. Venue is proper in the Southern District of New York because the Petitioner is subject to
    the jurisdiction of the New York Field Office of Immigration & Customs Enforcement.
    Accordingly, a substantial part of the acts giving rise to the herein claims have occurred
    and will occur in the Southern District of New York. 28 USC 1391, 2241. Respondent
    Thomas Decker is based in the Southern District of New York and is responsible for
    detention and removal decisions involving the Petitioner.

PARTIES

14. Petitioner Sukhdev Singh is a citizen of India and is presently in the custody of Immigration
    & Customs Enforcement, subject to the jurisdiction of the New York Field Office thereof.

15. Respondent Chad Wolf is the Acting Secretary of Homeland Security, the department of
    the federal government responsible for the enforcement of immigration laws. Secretary
    Wolf is the ultimate legal custodian of Mr. Lin. She is sued in her official capacity.

16. Respondent Matthew Albence is the Acting Director for ICE, the department of DHS
    responsible for apprehending, detaining, and removing Mr. Singh. Acting Director Vitiello
    is a legal custodian of Mr. Lin. He is sued in his official capacity.

17. Respondent Thomas Decker is the Field Office Director for the ICE-ERO New York Field
    Office. She is the immediate legal custodian of Mr. Singh. She is sued in her official
    capacity.

4

LEGAL BACKGROUND

18. The noncitizen spouses of U.S. citizens are eligible to become lawful permanent residents of the United States despite previously having been ordered removed, but to do so, they need to leave the country in order to apply for an immigrant visa at a U.S. consulate abroad—a procedure known as consular processing.

19. However, once a person who is in the United States illegally leaves the United States, that departure may immediately trigger several bars to admissibility. Of particular note here, an individual who has unlawfully present in the United States for over a year is barred from seeking admission for ten years. 8 USC 1182(a)(9)(B)(i)(II). An individual who has been ordered removed and subsequently departs the United States is likewise barred from seeking admission for ten years. 8 USC 1182(a)(9)(A). A person subject to the above grounds of inadmissibility may be eligible for a waiver. 8 USC 1182(a)(9)(B)(v) (providing for a waiver of unlawful presence if a spouse of parent would suffer extreme hardship). 8 USC 1182(a)(9)(A)(iii) (providing for consent to reapply for admission in the event of deportation. The processing time for a waiver frequently exceeds one year, during which time the non-citizen must remain abroad, apart from the very family that would suffer extreme hardship without him/her.

20. This is precisely the problem that federal regulations sought to address when they introduced the provisional waiver process and then later expanded eligibility for a provisional waiver to those with final orders of removal. *See Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule, 81 Fed. Reg. 50244, 50245 (July 29, 2016).* By allowing both applications for consent to reapply and unlawful presence waivers to be adjudicated stateside prior to the applicant's departure for consular

processing, the pain of family separation was substantially alleviated. *Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives; Final Rule, 78 Fed. Reg. 536-01 (Jan. 3, 2013); 81 Fed. Reg. at 21723695 -7- 5024-01 (expansion of waiver program will "reduce[] separation time among family members" and bring about "humanitarian and emotional benefits derived from reduced separation of families").*

## STATESIDE WAIVER PROCESS

21. The process for legalization for an individual like the Respondent with a final order of removal typically involves five parts.

22. First, the U.S.-citizen or Lawful Permanent Resident spouse files a Form I-130, Petition for Alien Relative, which requires establishing that the petitioner and beneficiary have a bona fide relationship.

23. Second, once the I-130 is approved, the noncitizen spouse files a Form I-212, Permission to Reapply for Admission into the United States After Deportation or Removal. As amended in 2016, the regulations governing this waiver state that it can be conditionally approved for a person with a removal order prior to that person's departure from the U.S. 8 C.F.R. § 212.2(j); 2016 Final Rule, 81 Fed. Reg. at 50262. An I-212 application filed as part of the stateside waiver process is adjudicated by the local USCIS field office, which usually takes several months.

24. Third, once a Form I-212 is conditionally approved, a noncitizen spouse applies for a provisional unlawful presence waiver using Form I-601A, Application for Provisional Unlawful Presence Waiver. 8 C.F.R. § 212.7(e)(4)(iv) (establishing eligibility of a person with a removal order who "has already filed and USCIS has already granted... an

6

application for consent to reapply for admission"). This application also takes several months to adjudicate.

25. Fourth, once the noncitizen obtains a provisional unlawful presence waiver, he or she must go abroad to appear for an immigrant visa interview at a U.S. consulate. 8 C.F.R. § 212.7(e)(3)(v). The departure from the U.S. executes the prior removal order. 8 U.S.C. § 1101(g); 8 C.F.R. § 1241.7. After the interview, if the Department of State determines no other ground of inadmissibility applies, it may issue an immigrant visa.

26. The issuance of an immigrant visa allows the non-citizen spouse to return to the United States. Upon admission at a port of entry, he/she becomes a lawful permanent resident.

27. The stateside pre-approval of the necessary waivers typically allows the non-citizen spouse with no other issues to be approved for an immigrant visa in short order upon departure, thus minimizing the separation that the spouses have to endure. The regulations were specifically designed to accomplish this.


### FACTS OF THIS CASE

28. The Petitioner, Sukhdev Singh, and his spouse Rajwinder Kaur, have been happily married since October 17, 2014. See **EXHIBIT A.** The Petitioner's spouse Rajwinder Kaur, has been a United States Citizen since 2013. See **EXHIBIT B.**

29. Mr. Singh has consistently worked and paid taxes in the United States for over twenty years now. See **EXHIBIT C.**

30. The Petitioner and his spouse have three children together, Ashmeet Kaur, who is eight years old, Avroop Kaur, who is six, and Agamjot Kaur, who is four years old. Each of these children of tender age was born in the United States. See **EXHIBIT D.**

31. Importantly, Ashmeet Kaur suffers from cerebral palsy, encephalopathy, chronic lung disease, and seizure disorder, among other serious medical conditions. She cannot walk and is entirely dependent on her parents for basic activities of daily life. Her four year old sister Agamjot is also developmentally delayed and has congenital chloride diarrhea, a chronic condition. See **EXHIBIT E.**

32. The Petitioner has been an involved parent throughout his children's lives, providing feeding, hygienic care, financial support, liaison with care and educational professionals, as well as necessary transportation.

33. The Petitioner was ordered removed on March 10, 1999. However, he has been reporting to the U.S. Department of Homeland Security since April 3, 2006. See **EXHIBIT F.**

34. One June 8, 2020, immigration officials suddenly took the Petitioner into custody without warning. The same day, his beloved daughter Ashmeet, attached as she is to her father, had to be admitted to the emergency room for care related to her ongoing serious medical conditions. See **EXHIBIT G.**

35. At the time he was taken into custody, he was already well on his way to legalization, his wife having filed an I-130 petition in his behalf as early as February of 2019. See **EXHIBIT H.** The petition remains pending at this time.

36. Given the facts of this case, it is simply not an option for the Petitioner to complete the whole process abroad. Years will likely ensue, during which the Petitioner's spouse will be rendered a single parent to three children. One of these children is completely disabled with cerebral palsy. It is unconscionable to remove the father from the equation of their family life, integral as he is to his daughter's well-being.

37. The couple had no opportunity to prepare their children for prolonged separation. Indeed, it is highly doubtful that any opportunity could have sufficed to ensure that these children in particular could be taken care of.

38. The Petitioner is facing imminent removal. Within the day, upon information and belief, he was already out of state, at the Elizabeth Detention Center. Thereafter, he was in transportation. Immigration & Customs Enforcement has refused to divulge his whereabouts.

CAUSES OF ACTION

**FIRST CLAIM**

VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT AND APPLICABLE REGULATIONS

39. Plaintiffs-petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

40. The Defendant-Respondents' detention and removal of Mr. Singh from the U.S. without allowing him to complete the provisional waiver process will violate the Immigration and Nationality Act and the applicable regulations.

41. Through Respondent's actions, Mr. Singh is unable to benefit from the regulations that outline how noncitizens with removal orders may become legal permanent residents through a "stateside" waiver process.

42. Through Respondents' actions, Ms. Kaur's I-130 petition on behalf of her husband and the approval of that petition would be meaningless because the benefit of having her husband with her during the "stateside" waiver process is frustrated by Defendant-Respondents' actions.

43. The Respondent's actions would allow them to unilaterally thwart any action taken in reliance on applicable regulations and make the Petitioner ineligible to continue the process without warning and at their own whim.

## SECOND CLAIM

### AS TO MR. SINGH'S REMOVAL FROM THE US

44. The Respondent's removal of Mr. Singh from the U.S. would violate the due process clause.

45. Due process protects a noncitizen's liberty interest in the adjudication of applications for relief and benefits made available under the immigration laws. See *Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (recognizing protected interests in the "right to seek relief" even when there is no "right to the relief itself"). Due process also protects a U.S. citizen's liberty interest in living with his spouse in the United States. *Zablocki v. Redhail*, 434 U.S. 374, 383 (1978) ("The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men." (quoting *Loving v. Virginia*, 388 U.S. 1, 12 (1967))).

## THIRD CLAIM

### AS TO MR. SINGH'S REMOVAL FROM THE US-VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT

46. The Respondent's removal of Mr. Singh from the United States would violate the Administrative Procedures Act's prohibition on agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 USC 706(2)(a).

## FOURTH CLAIM

### VIOLATION OF THE SUSPENSION CLAUSE

47. The Respondent's removal of Mr. Singh from the United States would violate the Suspension Clause by precluding any judicial review of the unlawfulness of that action.

## FIFTH CLAIM

### AS TO MR. SINGH'S DETENTION-VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT

48. The Respondent's detention of Mr. Singh violates the Immigration & Nationality Act.

49. The Immigration and Nationality Act (INA) provides for mandatory detention during the 90-day "removal period" that begins immediately after a noncitizen's order of removal becomes final. 8 U.S.C. § 1231(a)(1). However, after the 90-day removal period, the INA and its applicable regulations provide that detaining noncitizens is generally permissible only upon notice to the noncitizen and after an individualized determination of dangerousness and flight risk. See 8 U.S.C. § 1231(a)(6); 8 C.F.R. § 241.4(d), (f), (h) & (k).

50. The government never conducted a meaningful assessment of the Petitioner's dangerousness and flight risk. Detention would have been arbitrary and capricious under these standards insofar as it is confounds the mind how this Petitioner, who is a non-criminal, spouse of a United States, and father of a completely disabled child, could be either dangerous or a flight risk.

## SIXTH CLAIM

### AS TO DETENTION-VIOLATION OF THE DUE PROCESS CLAUSE

11

51. The Respondent's detention of the Petitioner violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

52. Due process permits the government to take away liberty only "in certain special and narrow nonpunitive circumstances ... where a special justification ... outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quotations omitted).

53. Those substantive limitations on detention are closely intertwined with procedural due process protections. *Foucha v. Louisiana*, 504 U.S. 71, 78-80 (1992). Noncitizens have a right to adequate procedures to determine whether their detention in fact serves the purposes of ensuring their appearance or protecting the community. Id. at 79; *Zadvydas*, 533 U.S. 692; *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 949 (9th Cir. 2008). Where laws and regulations fail to provide such procedures, the habeas court may assess whether the noncitizen's immigration detention is reasonably related to the purposes of ensuring her appearance or protecting the community, *Zadvydas*, 533 U.S. at 699, or require release unless a bond hearing is provided.

## PRAYER FOR RELIEF

WHEREFORE Petitioner Sukhdev Singh respectfully request that the Court:

A. Assume jurisdiction over this matter;

B. Temporarily, preliminarily, and permanently enjoin the removal of Mr. Lin from the U.S.

C. Order Mr. Lin's immediate release from custody or, in the alternative, require the government to provide him with a prompt bond hearing

D. Grant any further relief that the Court deems just and proper.


Dated: June 10, 2020
New York, NY

Nelson Madrid, Esq.

Pollack, Pollack, Isaac, and
DeCicco, LLP
225 Broadway, Suite 307
New York, NY 10007
(212)233-8100

*Counsel for Petitioner*